1  Alexander Anolik (SBN 042685)
   Alexander Anolik, a PLC
2  2107 Van Ness Ave., Ste. 200
   San Francisco, CA 94109
3  Telephone: (415) 673-3333
   Facsimile: (415) 673-3548
4  E-Mail: anolik@travellaw.com

5  Attorney for Plaintiffs

6

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10

11  CARMELITA LLORERA, ESTATE OF        )  Case No.: No. CV 08-00134-SC
    ROMIEL LLORERA,                     )
12                                      )  **SEPARATE**
                                        )  **CASE MANAGEMENT STATEMENT**
                    Plaintiffs,         )
13                                      )
        vs.                             )
                                        )  Conference Date: 4/25/08
14                                      )  Time:  10:00 a.m.
    AIR FRANCE-KLM, COMPAGNIE           )  Judge: Hon. Samuel Conti
15  NATIONAL AIR FRANCE, AND DOES 1     )
    through 50,                         )
16                                      )
                    Defendant          )
17                                      )
                                        )
18  _____

19
        1.      Plaintiffs Carmelita Llorera, and Estate of Romiel Llorera, (Plaintiffs) separately
20
    submit this Case Management Statement in accordance with Civil Local Rule ("L.R.") 16-9.
21
    Pursuant to Civil L.R. 16-9, Plaintiffs made several reasonable efforts to meet and confer with
22
    Defendant Air France-KLM ("Air France") in order to prepare a Joint Case Management
23
    Statement, including the sending of multiple letters requesting said meet and confer, but these
24
    requests were denied by Defense Counsel.  Anolik Declaration ¶ 3.
25
        2.      After also discussing the statement on two prior occasions, Defense Counsel
26
    Steven Rodriguez informed Plaintiffs' Counsel Alexander Anolik on April 17, 2008 (yesterday),
27

28

that Air France had not responded, and would not officially meet and confer for the purpose of submitting a Joint Case Management Statement, because he believed Air France had not been served properly at that time and submitting a statement might affect any jurisdiction issues his client may have. <u>Anolik Declaration</u> ¶ 4. Therefore, Plaintiffs are respectfully submitting this Separate Case Management Statement with as much information as we are able to ascertain without the participation of Defendant Air France.

## I.    Jurisdiction and Service

### a.    Subject Matter Jurisdiction

3.    Decedent Romiel Llorera and Plaintiff Carmelita Llorera, his surviving wife, are citizens of the United States. Plaintiffs bring this action for injury and death arising from an international airline flight. The Montreal Convention is a Treaty by the United States, which was entered into force on Nov. 4, 2003 (i.e. Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999; S. Treaty Doc. 106-45, 1999 WL 333292734 (2000)). It imposes obligations on Air Carriers providing International air carriage and provides remedies to passengers. As a result, federal question jurisdiction exists given that plaintiff's action is governed by a treaty of the United States. U.S. Constitution, Article III, §2; 28 U.S.C. §1331.

4.    In addition, Plaintiff Llorera is a citizen of (and is domiciled in) the State of California. Defendant Air France-KLM, and its subsidiary Compagnie National Air France, is a foreign and French corporation, incorporated in France and with its principle place of business in France. The amount in controversy exceeds the sum of $75,000, exclusive of interest and costs. As a result, federal Diversity jurisdiction exists pursuant to 28 U.S.C. §1332(a).

**b. Personal Jurisdiction**

5.      There are no personal jurisdiction issues in this case because the court has personal jurisdiction over both Plaintiff and Defendant.

6.      Plaintiff is a resident of Solano County, California, while Defendant Air France is a foreign corporation doing business in California.  Defendant sells air travel, tour packages, and travel services to consumers all over California, including in San Francisco.  Defendant operates ticket counters, and flies in and out of various cities in California, including: San Francisco, (SFO) San Mateo County, Sacramento, and Los Angeles.

7.      Even a single transaction can trigger personal jurisdiction when the defendant purposefully avails itself of the privilege of conducting activities with the forum state and invokes the benefits and protection of state law.  Hanson v. Denckla, 357 U.S. 235 (1958). Through entering into contracts, soliciting costumers, and maintaining property in the form of ticket counters and office space in California, Air France has purposefully availed themselves to California law.  Therefore, Air France's many purposeful contacts with California are certainly sufficient for the court to invoke personal jurisdiction.

**b.      Service**

8.      Service has become an issue in this action because of our inability to locate an acceptable agent for service of process on Air France earlier in this process.  Although Air France has been operating in California since at least 1963, it has failed to register with the Secretary of State as a foreign corporation transacting intrastate business as required by California Corporations Code Section 2101(a), and it has not registered with the Secretary of State an agent for service of process as required by California Corporations Code Section 2101(a)(4).

Separate Case Management Statement
Case No. CV 08-00134-SC

9.    California Corporations Code Section 2101(a) mandates that a foreign corporation shall not transact intrastate business without having first obtained from the Secretary of State a certificate of qualification.   California Corporations Code section 191 defines "transacting intrastate business" as "entering into repeated and successive transactions of its business in this state, other than interstate or foreign commerce."   In California, Air France sells tickets for air carriage, online and at kiosks, has maintained office space (most recently in San Francisco at 100 Pine Street Suite 230, San Francisco, California 94111), and engages in customer and travel agent promotions.  These actions constitute repeated successive transactions in California, and Air France's failure to register here and submit an agent of process here have acted as an unreasonable hindrance to our attempts to serve them promptly.

10.    Our attempts to serve have also been curtailed by Defense Counsel's unwillingness to cooperate with us in this process.  After Plaintiffs filed in Superior Court, the case was transferred to Federal Court at Air France's request.   Plaintiffs made requests of Opposing Counsel to either accept service or to identify authorized agent, but was repeatedly denied. Anolik Declaration ¶ 5(F).  Subsequently, Plaintiffs have made numerous extensive efforts to locate an Air France agent for service of process, in California and nationwide.  See Anolik Declaration ¶ 5 (A)-(H), ¶ 6-9.  Plaintiffs conducted internet searches on governments, aviation and business websites including, but not limited to, the Department of Transportation, ("DOT"), Federation Aviation Administration, and Air France.  Plaintiffs also made direct inquiries to various institutions including, but not limited to, calls to Secretary of State corporate divisions in New York, California, Delaware, Arizona, Nevada, Florida and Washington D.C., and calls to representatives in the Department of Transportation, ("DOT") Federal Aviation Administration ("FAA"),  Chief Counsel Office for the FAA, General Counsel Office for the

Separate Case Management Statement
Case No. CV 08-00134-SC

DOT, Assistant Secretary for Aviation and International Affairs, and Office of Aviation Department of International Fares. Id.

11.     After all this extensive searching, Plaintiffs have finally been able to locate information from the DOT on Air France's Registered DOT Agent in the United States, and from this information was able to identify a highly placed corporate officer in the U.S. and is currently in the process of serving that officer. We anticipate that this officer will be properly served by scheduled date of the Case Management Conference.

**c.  Venue**

12.     If the court derives its authority through diversity jurisdiction, then the proper venue is the judicial district where all the plaintiffs or all the defendants reside or the district where the claim arose.

13.     Here, Plaintiff is a resident of Solano County, California, which is in the Northern District of California, while Defendant is a foreign corporation, incorporated in France. The tickets for air carriage whose contract gave rise to one area of dispute in this action were also purchased in San Francisco, which is also located in the Northern District. Therefore, the Northern District is the proper venue for this dispute.

**II.    Facts**

14.     In December 2005, Plaintiff Carmelita Llorera, a registered nurse for over thirty years and an expert in dialysis, purchased round-trip preferred tickets for her husband (Romiel Llorera-decedent), herself and her two daughters for air carriage by Compagnie National Air France ("Air France") from San Francisco, California to France on December 19, 2005, and return air carriage from France to San Francisco on January 2, 2006.

15.     On January 2, 2006, Plaintiff, Romiel Llorera and two of their daughters were driven to Charles De Gaulle airport in France.  Plaintiff and her family were told by Air France's boarding-service counter personnel that their air carriage was in jeopardy because of their intentional overbooking of the flight. Both Plaintiff and Romiel Llorera informed Air France's boarding-service counter personnel that Romiel Llorera suffered from kidney failure requiring kidney dialysis three times a week on a strict, vital and urgent timetable and they had a needed dialysis treatment schedule at Kaiser Hospital on their return to San Francisco.  Plaintiff and Romiel Llorera also informed Air France's personnel that Romiel Llorera was scheduled to receive dialysis in California the following day: January 3, 2006; that Romiel Llorera would not be able to obtain dialysis in France on January 2nd or 3rd on such short notice and without a dialysis appointment; that Romiel Llorera was not feeling well; that plaintiff was a Registered Nurse who provided important medical assistance to Romiel Llorera and had to physically be with him; and that it was critical to Romiel Llorera' s well-being that Air France immediately provide or otherwise immediately arrange for air carriage for them to San Francisco for purposes of medical treatment and dialysis.

16.     Plaintiff and Romiel Llorera requested that Air France's boarding-service counter personnel obtain assistance from a supervisor. Air France's boarding-service counter personnel refused to and failed to obtain assistance from a supervisor.  Air France's boarding-service personnel failed to follow Department of Transportation (14 C.F.R. 250) and Montreal Convention (Article 19, et seq.), European Parliament Regulation (EC 261/2004) requirements and Air France's own overbooking procedures to seek out and find "volunteers" to relinquish their confirmed reserved space in exchange for Air France's offer of compensation given the oversold flight.   Air France failed to seek alternative air carriage through any of its affiliates,

including Sky Team, the largest active carrier group which Air France is a major "team"

member.

17.    The Lloreras were told to come back the next day, and did so, flying out of

Charles De Gaulle on January 3, 2006.  They were not able to obtain dialysis treatment during

this wait period.  While on the plane, Romiel Llorera started complaining of a headache and went

into seizures.  Carmelita Llorera quickly started CPR on him, and the Llorera's daughter went to

the first class to ask for assistance.  No assistance was provided. She was told to "leave first class

area immediately."  Romiel Llorera was moved into the flight attendant area behind a curtain.

Two passenger physicians then walked behind the curtain.  Carmelita Llorera and her daughter

noticed that only a small canister of O2 was available, no defibrillator was brought in, and no

emergency meds were readily available.

18.    When Carmelita Llorera was allowed behind the curtain, she noticed Romiel

Llorera's clothes were intact and there was no sign of skin compromise (i.e. redness from the

defibrillator shot). Romiel Llorera subsequently died while on Air France's air carrier en route to

San Francisco on January 3, 2006.

**III.    Legal Issues**

19.    The legal issues involved in this case include but are not limited to wrongful

death, negligent medical rescue, carrier overbooking and legal failure to accommodate

passengers, breach of contract, negligence, intentional inflection of emotional distress, and loss

of consortium.  Numerous statutes and laws are involved including but not limited to common

law, the Montreal Convention Treaty (Convention for the Unification of Certain Rules for

International Carriage by Air, May 28, 1999; S. Treaty Doc. 106-45, 1999 WL 333292734

(2000)), Regulation (EU) No 261/2004 Of The European Parliament And Of The Council of 11

February 2004 ("European Denied Boarding Regulation")  and other federal rules and statutes

including but not limited to the Department of Transportation (i.e. 14 C.F.R. 250), the Federal

Aviation Act, the American's With Disabilities Act as well as California statutes including but not limited to the California Corporations Code *et seq.*, and California Civil Code section 3294.

### IV.    Motions

20.    On January 23, 2008 Defendant filed a Motion for Leave for New York Attorney Christopher Raleigh to appear in Pro Hac Vice.  On January 25, that motion was granted. Plaintiff is not aware of any pending or anticipated motions.

### V.    Amendment of Pleadings

At this time we do not believe our pleadings need any further amending.

### VI.    Evidence Preservation

21.    We are preserving all of Plaintiffs', as well as decedents, records which are relevant to this action.

### VII.    Disclosures

22.    On 1/23/08, Air France filed a Corporate Disclosure Statement pursuant to Federal Rules of Civil Procedure §7.1.

### VIII.    Discovery

23.    Plaintiffs will seek personal information of Defendant employees with knowledge of the incident at issue, as well as employees with knowledge of overbooking procedures and policy, statistics, past discrimination against passengers checking in, as well as safety issues related to Department of Transportation, French, and European Union compliance for medical training, practices, and experiences for flight crew.

### IX.    Related Cases

24.    There are no related cases that we are aware of.

## X.    Relief

25.    Plaintiff demands relief for the wrongful death of her husband and prays for general, compensatory and consequential damages, which amount is in excess of $75,000, including, inter alia, damages for loss of consortium, loss of household services and loss of love, comfort, companionship, society, solace and moral support, together with interest and costs. Damages are to be determined but are based on several considerations and circumstances surrounding the incident including the actions and behavior by Air France personnel.  Damages sought are also based on the quality of plaintiff's marriage with Romiel Llorera and her dependence on him for companionship and comfort.  Damages will also be assessed based on the fact that Romiel Llorera's wife and daughter were present and witnessed his death as well as Air France's grossly negligent response to his medical emergency and extreme conduct in failing to follow government ordered carrier denied boarding procedures.

## XI.    Settlement and ADR

26.    On April 11, 2008 we sent all Air France counsel letters requesting their participation in a meet and confer so that we may discuss ADR procedure and possibly submit case to ADR or set up phone conference as required by CM Standing Order 3-1-07.  Defense counsels never responded to this ADR request, their only response was that they had not been properly served.  Plaintiff counsel has received the ADR handbook and rules and reviewed them.

## XII.    Consent to Magistrate Judge For All Purposes

27.    Plaintiffs do not consent to a magistrate judge.

## XIII.    Other References

28.    Case involves simple issues for a single judge, no multidistrict litigation is involved.

---

Separate Case Management Statement
Case No. CV 08-00134-SC

## XIV.   Narrowing of Issues

29.     Plaintiff cannot narrow the issues at this time until Defendant participates in the pre-trial preparation process and communicates with us further.

## XV.   Expedited Schedule

30.     Expedited process is not needed in this matter.

## XVI.   Trial

31.     Plaintiff has requested a jury trial.  Length of the trial is unknown, but it will be more readily ascertainable when Defendant submits their list of evidence and witness.

## XVII.   Disclosure of Non-party Interested Entities or Persons

32.     Certification will be filed when additional info is obtained from Defendant.

DATED: April 18, 2008

Alexander Anolik
Attorney for Plaintiff